~~SEALED~~    ~~ORIGINAL~~

# United States District Court

## SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

**v.**

**JALIL WILLIAMS, and
GREGORY COLEMAN**

## CRIMINAL COMPLAINT

CASE NUMBER: 1:08-MJ-090-1
1:08-MJ-090-2

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about November 29, 2007, in Marion County, in the Southern District of Indiana defendants did, (Track Statutory Language of Offense)

unlawfully obstruct, delay and affect commerce, and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the said JALIL WILLIAMS and GREGORY COLEMAN did unlawfully take and obtain personal property, that is, money, from the person and in the presence of an employee of the Village Pantry, located at 4023 East 10th Street, Indianapolis, Indiana, against that person's  will, by means of actual and threatened force, violence and fear of injury, immediate and future to said person, by the use and brandishing of a firearm, to wit: a short-barreled shotgun.

in violation of Title 18, United States Code, Sections 924(c) and 1951.  I further state that I am a Special Agent and that this complaint is based on the following facts:

See attached Affidavit

Continued on the attached sheet and made a part hereof.

_____
**Daniel Neie, Special Agent**
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to before me, and subscribed in my presence

April 14 , 2008 _____
**Date**

at _____Indianapolis, Indiana_____
**City and State**

William T. Lawrence, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

_____
**Signature of Judicial Officer**

## AFFIDAVIT

1.     Your Affiant, Daniel Neie, is employed as a Special Agent by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and has been so employed for over six (6) years.  Prior to my employment as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, I was employed as a Police Officer with the City of North Kansas City, Missouri.  I have attended numerous classes at the Federal Law Enforcement Training Center, to include the Criminal Investigator School and the Bureau of Alcohol, Tobacco and Firearm's New Professional Training School.

2.     I am a sworn Federal Agent empowered under the laws of the United States to investigate violations of federal firearm laws pertaining to the Gun Control Act of 1968 and have focused attention on the detection and apprehension of individuals violating both Federal and State laws, to include 18 United States Code Section 1951 and 924 and 26 United States Code Section 5861(c).

3.     There is probable cause to believe that Jalil WILLIAMS ("WILLIAMS")(black male, date of birth **/**/1987, Social Security number ***-**-3145) and Gregory Coleman ("COLEMAN")(black male, date of birth **/**/1989, Social Security number ***-**-4638) have violated Title18 United States Code Sections 1951 and 924(c) and that WILLIAMS violated Title 26 United States Code Section 5861(c).  Specifically, there is probable cause to believe that between November 26 and December 5, 2007, WILLIAMS, COLEMAN, and

others participated in a series of armed robberies affecting interstate commerce, and that WILLIAMS, COLEMAN, and other used a short-barreled shotgun to carry out those robberies.  This Affidavit is submitted in support of a criminal complaint and arrest warrants for WILLIAMS and COLEMAN.

4.      The probable cause is based on information set forth in the following paragraphs, which is either known personally to me or has been related to me by other law enforcement officers and agents.

## APPLICABLE LAW

5.      Under Title 18 U.S.C. § 1951, commonly referred to as the Hobbs Act, a robbery that affects interstate commerce is a federal crime.   The Hobbs Act provides, in part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than 20 years or both.

Title 18 U.S.C. § 924(c) provides for enhanced, consecutive penalties where an individual "during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm  . . ."

Title 26 U.S.C. § 586(c) provides that it shall be unlawful for any person to receive or possess a firearm made in violation of the provisions of the chapter. Possession of a short-barreled shotgun is a violation of this section.

### November 26, 2007 Max's Beauty Supply

6.     On November 26, 2007, in Marion County, Indiana, Max's Beauty Supply was the victim of an armed robbery.  Indianapolis Metropolitan Police Department Case Report number 07-019007 documents this incident. Specifically, at approximately 1:27 PM, Indianapolis Metropolitan Police Department ("IMPD") officers responded to a report of a robbery of a business at Max's Beauty Supply, which is located at 5435 East 38th Street in Indianapolis. Once on scene, officers met with an employee of Max's Beauty Supply, who stated that three black males had come into the store, walked around a little bit, and then one of the individuals, a heavy set male, started asking her about skull caps.  At this point, a second individual, wearing a black hooded sweatshirt with the hood pulled up over his head, walked up and pulled out what appeared to be a sawed off shot gun from his waist band.  The employee stated that the individual with the shotgun told her "shut the Fuck up and go open the register". The heavy set male then went to the front door of the business to act as a lookout while the individual with the sawed off shot gun and the third individual, who was wearing a green hoodie, went behind the counter. The employee complied with the demand and opened up the register.  The two individuals then reached in the register and grabbed approximately $70 out of the register and took an additional $130 from the employee. The three individuals then started to leave the business.

7.    Max's Beauty Supply is equipped with video cameras, and the video from the surveillance system was turned over to the Indianapolis Metropolitan Police Department

### November 29, 2007 Village Pantry

8.    On November 29, 2007, at approximately 9:44 PM, Indianapolis IMPD officers responded to the Village Pantry located at 4023 East 10th Street, Indianapolis, on a report of an armed robbery. Upon arrival, IMPD spoke with an employee of the Village Pantry who advised officers he was working at the store when two suspects entered the business. The two suspects shopped around the store and then one of the suspects came up to the counter to buy an item. When paying for the item, this individual told the clerk "don't move." The second suspect then came into Webb's view and had what appeared to be a sawed off shotgun in his sleeve. The first suspect then took the money from the open cash drawer and both suspects fled east out the front door.

9.    IMPD detectives responded to the armed robbery and viewed the video surveillance tape which captured the robbery. Detectives seized the video tape as evidence and transported it to the IMPD Homicide/Robbery Office.

10.    An IMPD Evidence Technician was summoned to the scene to assist with the collection of physical evidence. The technician dusted the items that had been left behind by one of the suspects for latent fingerprints.

## December 5, 2007 Liquor Unlimited

11.     On December 5, 2007, at approximately 9:30 PM, two black males
entered the Liquor Unlimited store, located at 1517 North Arlington Avenue,
Indianapolis.  One of the black males was brandishing a sawed off shotgun, the
other black male was brandishing a chrome pistol.  One of the black males
approached the two Liquor Unlimited clerks and a customer.  He then ordered
both clerks to the floor.  He then began to assault the customer and demanded
the customer's money.  The customer complied with the suspects demand and
was robbed of approximately $400.  Liquors Unlimited has two cash registers.
The suspects took all of the money out of each register, approximately $250.00.
The suspects then left the business.  The employees described the suspect
brandishing the sawed off shot gun as about 5'08" to 5'09" feet tall, in his early
20's, 140 to 150 pounds with medium colored skin.  The suspect holding the
silver handgun was described as being approximately the same height, weight
and age as the first male, but with very dark skin.

12.     On December 6, 2007, IMPD Detectives received information from the
IMPD Crime Analysis Unit, regarding Latent Print run number 073246, taken
after the Village Pantry armed robbery.  This latent print run contained a latent
fingerprint that was recovered from a potato chip bag that was left on the
countertop of the Village Pantry by one of the two suspects during the robbery.
The fingerprint was identified as belonging to Gregory Coleman.

13.     On or about December 10, 2007, IMPD detectives compiled a photo array containing a gallery photo of one of the suspects in the Liquor Unlimited robbery and presented it to one of the clerks on duty during the robbery. The clerk immediately pointed to a gallery photo of Jalil WILLIAMS and identified him as the suspect that had carried the sawed off shotgun during the robbery of Liquor Unlimited. WILLIAMS was also identified as the person who demanded money from the registers, and then robbed the customer. IMPD detectives noted that IMPD records for WILLIAMS listed him as approximately 5'07" tall and weighing approximately 165 pounds.

14.     On December 10, 2007, IMPD detectives also met with the clerk on duty during the Village Pantry armed robbery. The clerk was presented with a photo array containing a picture of COLEMAN and five similar looking individuals. After viewing the array, the clerk positively identified Coleman as one of the suspects who robbed the Village Pantry on November 29, 2007. The clerk was also shown a photo array containing a photo of WILLIAMS and five similar looking individuals. The clerk positively identified WILLIAMS as one of the suspects who robbed the Village Pantry on November 29, 2007.

15.     On December 12, 2007, IMPD detectives executed two (2) search warrants. The first search warrant was issued for 4409 Linwood Court, Apartment 4, Indianapolis, Indiana and the second search warrant was issued for 4409 Linwood Court, Apartment 7, Indianapolis, Indiana. While executing the search warrants, IMPD officers located WILLIAMS in the residence located at 4409 Linwood Court, Apartment 7, Indianapolis, Indiana, and Gregory Coleman

was located in the residence located at 4409 Linwood Court, Apartment 4, Indianapolis, Indiana.

16.    During the execution of the search warrant at 4409 Linwood Court, Apartment 7, Indianapolis, Indiana, police officers located a New England Firearms, model Pardner SBI, 12 gauge shotgun, serial number NB 348948. The barrel and stock of this firearm had been cut creating a short-barrel shotgun. Additionally, a black hoodie was recovered from the residence.

17.    During the execution of the search warrant at 4409 Linwood Court, Apartment 4, Indianapolis, Indiana, police officers located a Cobra Enterprises, Inc., model CA .380, .380 caliber pistol, serial number CP005918.

18.    On December 12, 2007, Jalil WILLIAMS was interviewed by IMPD detectives.  Prior to questioning, WILLIAMS was advised of his Miranda Warning by the officers.  WILLIAMS waived his rights and documented this action by signing an IMPD Custodial Interrogation form (IPD Form No. 10-1-37).

19.    During the interview, WILLIAMS was asked about the robbery that occurred on December 5, 2007, at the Liquor Unlimited store located at 1517 N. Arlington Avenue, Indianapolis.  WILLIAMS informed the investigators in sum and substance that he had been one of the two individuals involved in that robbery.  WILLIAMS explained that the other individual is known to him as

"Lucky" and that he does not know his real name. WILLIAMS further explained that "Lucky" had a handgun during the robbery and he (WILLIAMS) was in possession of the listed short barreled shotgun.

20.     During the interview with WILLIAMS, the investigators began questioning WILLIAMS about when he started to perpetrate robberies. One of the investigators asked WILLIAMS, "what, what do you recall about your first one, the first, the first time you did it (robbery)?" WILLIAMS stated, "To tell you the truth, I couldn't even tell you how many people I done robbed." The investigator then responded, "Does it seem like a lot? Seem like more than ten, more than fifteen?" To this question WILLIAMS responded, "Seem like a whole lot."

21.     WILLIAMS was asked about his involvement in November 29, 2007, armed robbery at the Village Pantry located at 4023 East 10th Street, Indianapolis. WILLIAMS informed the investigators that he and another individual had robbed that business. WILLIAMS refused to identify the other individual involved in the robbery.

22.     WILLIAMS was asked about his involvement in the November 26, 2007, armed robbery that occurred at Max's Beauty Supply located at 5435 east 38th Street, Indianapolis. WILLIAMS responded to the questioning by stating, "Yeah, I robbed that." At several other points during the interview, WILLIAMS confirmed that he had been involved in the Max's Beauty Supply robbery. WILLIAMS did not, however, state who else was involved in the robbery. At one point during the interview WILLIAMS was asked by the investigators if there was anything he thought was funny about any robberies. Williams stated, "At the beauty supply

on 38th, the way she screamed when she seen that gun there, and she was screaming and she froze up and just screamed, just like some movie, planet horror shit.  And they just, like, it took a whole lot not to laugh while I was robbing her, man."  WILLIAMS finished the thought by laughing.

WILLIAMS then stated, "It took a whole lot and then I didn't even tell her to get on the floor and she just laid there and balled up herself and shit.  The shit was crazy, man."

23.     When investigators asked where he acquired the listed New England Firearms, 12 gauge shotgun, WILLIAMS explained that he had had the shotgun for a long time.  When asked about a specific time-frame, WILLIAMS stated, "Like a year and a half."  The investigators then asked WILLIAMS again where he bought the firearm.  WILLIAMS informed the investigators that he had purchased the firearm on the street.  WILLIAMS was then asked about the length of the firearm and if he had modified the firearm.  WILLIAMS indicated that he had purchased the firearm in its current modified state.  WILLIAMS explained, "Yeah, it was sawed off, the handle and the barrel."

24.     At one point in the interview, WILLIAMS told the investigators that he has owned approximately twenty-seven (27) or thirty (30) firearms.  William then told detectives that the short-barreled shotgun was his favorite weapon.  The investigators then asked WILLIAMS why the shotgun was his favorite firearm and WILLIAMS responded, "'Cause it, I mean, it's, it's big enough when on a robbery, I mean, and you put it in somebody's face, they going to shit their pants almost faster than a handgun.  It make it happen faster."

25.     WILLIAMS was the asked about several other robberies in the
Indianapolis area that involved the use a short barreled shotgun. WILLIAMS
claimed that he did not participate in these robberies. He explained to the
investigators that other people had "rented" his shotgun to commit robberies.
WILLIAMS specifically stated, "People pay me to rent it." WILLIAMS then
explained, "If you came and you tell me you got fifty, you could get it." The
investigators then asked WILLIAMS if that price was for one night. WILLIAMS
indicated that was correct. Later in the interview, WILLIAMS stated that he
"rented" the shotgun, "probably in a week about four or five" times. WILLIAMS
also stated he would only rent the shotgun to people he knew and trusted, and
that he collected the "rental" fee upfront. WILLIAMS also explained that he
expected to have the firearm returned to him by 10:00 a.m. the day after he
rented it.

26.     On January 14, 2008, IMPD detectives showed a photo array containing a
photo of Jalil WILLIAMS and five (5) other similar photos to another witness to
the armed robbery at Max's Beauty Supply. The witness identified WILLIAMS as
one of the three individuals seen exiting the business immediately after the
robbery occurred.

27.     On January 15, 2007, Marion County Superior Court 3 received an
unsolicited hand-written letter from Gregory Coleman. Coleman had been
arrested for robbery in connection with his involvement in November 29, 2007,
robbery of Village Pantry located at 4023 East 10th Street, Indianapolis. The
case was assigned to Marion County, Indiana, Superior Court 3 under cause

number49G030712FB265737.  The letter begins, "Hi! My name is Gregory
Coleman, gallery #649517. And im writing you to confess about my robbery
case."  Coleman later suggests in the letter that he, "pay back all the money I
took and to say sorry to the employees and manger for my part in the robbery."

28.      Your Affiant contacted the Bureau of Alcohol, Tobacco, Firearms and
Explosives' National Firearms Act (NFA) Branch.  Based on that inquiry, a search
of the NFA records was conducted for Jalil WILLIAMS and for the New England
Firearms short-barreled shotgun bearing serial number 348948.  This search met
with negative results.

29.  On April 11, 2008, Your Affiant went to the Indianapolis Metropolitan Police
Department's property room and inspected the New England Firearms, model
Pardner SBI, 12 gauge shotgun, serial number NB 348948.  This firearm is
stored in the property room under Indianapolis Metropolitan Police Department
Case Report number 07-0190007.  Your Affiant measured the length of the listed
shotgun.  The barrel length was approximately 14 13/16 inches long.  Your
Affiant then measured the overall length of the shotgun.  The overall length of
the listed shotgun was approximately 21 inches.

30.    Based upon my training and experience, Your Affiant is aware that it is unlawful to possess an unregistered shotgun having a barrel length less than 18 inches or an overall length of less than 26 inches.

31.    In the ordinary course of business, Max's Beauty Supply, Village Pantry, and Liquor Unlimited all regularly purchase, sell, and/or use products that are manufactured outside the state of Indiana. Those items must be shipped to Indiana to be sold/used in their individual stores. Accordingly, the armed robbery of those businesses affects interstate commerce.

## CONCLUSION

Based on the foregoing, there is probable cause to believe that Jalil WILLIAMS and Gregory COLEMAN violated Title 18, United States Code, Sections 1951 and 924(c). Additionally, Jalil WILLIAMS violated 26 United States Code Section 5861(c).


Daniel Neie
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this _____ 14 _____ day of April 2008


William T. Lawrence
United States Magistrate Judge
Southern District of Indiana